JEFFER MANGELS BUTLER & MITCHELL LLP
R. SCOTT BRINK (Bar No. 138644)
sbrink@jmbm.com
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:(310) 203-8080
Facsimile: (310) 230-0567

JOSEPH J. MELLEMA (Bar No. 248118)
jmellema@jmbm.com
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone: (949) 623-7200
Facsimile: (949) 623-7202

Attorneys for
Paramount Tariff Services, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PARAMOUNT TARIFF SERVICES, INC., <br><br>          Plaintiff, <br><br>     v. <br><br> ACE TARIFF SOLUTIONS, INC., and RAY NAM, <br><br>         Defendants. | Case No. <br><br> **VERIFIED COMPLAINT FOR (1) WRONGFUL ACCESS OF PROTECTED COMPUTERS UNDER COMPUTER FRAUD AND ABUSE ACT, (2) COMPUTER TAMPERING AND UNAUTHORIZED ACCESS UNDER COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, (3) UNAUTHORIZED ACCESS UNDER STORED COMMUNICATIONS ACT, (4) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (5) TRADE SECRET MISAPPROPRIATION UNDER DEFEND TRADE SECRETS ACT, (6) TRADE SECRET MISAPPROPRIATION UNDER CALIFORNIA UNIFORM TRADE SECRETS ACT, (7) UNFAIR BUSINESS PRACTICES (CAL. BUS. PROF. CODE § 17200, *ET SEQ.*), AND (8) BREACH OF DUTY OF LOYALTY;** <br><br> **DEMAND FOR JURY TRIAL** |

Docusign Envelope ID: E9BBBD92-2A96-4455-8854-EC5DC3017DDA

Plaintiff Paramount Tariff Services, Inc. ("PTS") alleges as follows:

**INTRODUCTION**

1.    This case arises from defendants Ace Tariff Solutions, Inc.'s ("ATS") and Ray Nam's (collectively "Defendants") theft of PTS's proprietary and confidential data and information, both before and after leaving employment at PTS, wrongfully using PTS's proprietary online platform for tariff publication services as their own, misappropriation of PTS's trade secrets, and illegal access of PTS's computers and servers to poach PTS's customers and develop a competing venture.

2.    Formed in 1990, PTS is a well-known and long-standing business and provides a comprehensive set of services for common carriers and freight-forwarding communities. For the past 35 years, PTS developed and continually refined a confidential and proprietary system designed to publish tariff rates of its customers to satisfy Federal Maritime Commission ("FMC") requirements, and provides a unique platform to convey such information that distinguishes it and gives it a competitive advantage in the marketplace.

3.    PTS expended significant time and resources in developing its system and related servers and databases that use proprietary and confidential data and information, and related trade secrets, to operate a seamless system for publishing customer tariff rates. The online platform by which PTS publishes its customers' tariff rates is unique, sophisticated, and offers a best-in-class service to the common carrier and freight-forwarding communities.

4.    For almost the past 20 years, PTS has employed Defendant Ray Nam until he departed PTS in December 2024, where he was given a trusted position as Director of Operations and access to PTS's proprietary and confidential system and data. Unbeknownst to PTS, Defendant Nam had, in the two years before his departure, conceived of and executed a premeditated plan to steal PTS's data and information relating to its operations, financial data, and marketing information, steal and use certain of its trade secrets, wrongfully use PTS's proprietary online

Docusign Envelope ID: E9BBBD92-2A96-4455-8854-EC5DC3017DDA

1 platform as Defendants' own, steal PTS's customer information from PTS's servers
2 to develop its competing venture, ATS, and poach PTS's customer base in the
3 process.

4      5.     Defendants' acts, uncovered by PTS in its investigation, are egregious.
5 Defendant Nam, while employed by PTS, obtained access to numerous data and
6 files of PTS (at least 350 files), downloaded them to external drives, and took them
7 with him upon his departure from PTS. He even made a complete Windows desktop
8 backup copy of his desktop computer just days before departing PTS. After
9 departing PTS, Defendant Nam continued to access PTS's servers to obtain
10 proprietary and confidential customer information which he then used, in
11 combination with the other PTS data and information he kept, to poach PTS's
12 customers. PTS has documented Defendants' wrongful accesses, including the
13 specific data and customer information he took or wrongfully accessed, and has
14 identified at least 11 customers that Defendants poached from PTS using that ill-
15 gotten information.

16      6.     Without intervention, Defendants will continue to wrongfully use
17 PTS's proprietary and confidential information and data, its online platform, its
18 trade secrets, and its customer information, to PTS's detriment, in order to develop
19 its competing venture, ATS. PTS seeks actual and exemplary/punitive damages for
20 Defendants' wrongful acts, as well as pre-judgment and post-judgment interest. PTS
21 also seeks, among other things, an order requiring Defendants to return PTS's
22 confidential and propriety information, conducting an audit of Defendants' tariff
23 publishing system, and enjoining Defendants from further wrongful acts.

24                           **PARTIES**

25      7.     Paramount Tariff Services, Inc. is a California corporation, with a
26 principal place of business in Torrance, California.

27      8.     Ace Tariff Solutions, Inc. is a California corporation, with a principal
28 place of business in Torrance, California.

VERIFIED COMPLAINT          3

73177000v1

9.      Ray Nam is an individual residing in Torrance, California, and is the purported owner, Chief Executive Officer and Chief Financial Officer of Ace Tariff Solutions, Inc.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over the (1) Computer Fraud and Abuse Act claim in this action pursuant to 18 U.S.C. §1030, (2) Stored Communications Act claim in this action pursuant to 18 U.S.C. § 2707, and (3) Defend Trade Secrets Act claim in this action pursuant to 18 U.S.C. § 1836.

11.      This Court has both general and specific jurisdiction over Defendant Nam because he is domiciled in California, transacted business within California, and committed tortious acts within, and affecting, California. Jurisdiction is also proper because Defendant Nam has endeavored to unlawfully obtain PTS's trade secrets that are maintained in this District.

12.      This Court has both general and specific jurisdiction over Defendant ATS because ATS is incorporated and has its principal place of business in California, transacted business within California, and committed tortious acts within, and affecting, California. Jurisdiction is also proper because Defendant ATS has endeavored to unlawfully obtain PTS's trade secrets that are maintained in this District.

13.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), among other reasons, because Defendant Nam resides in this District and Defendant ATS has its principal place of business in this District, and the action concerns injuries that occurred in this District. In addition, Plaintiff's principal place of business is located in this District, and has been injured in this District as a result of Defendants' wrongful conduct.

## BACKGROUND

## PTS Develops its Tariff Services Business

14.      In 1990, PTS's founders formed PTS, a professional organization

VERIFIED COMPLAINT                    4

73177000v1

Docusign Envelope ID: E98BBD92-2A96-4455-8854-EC5DC2017DDA

dedicated to serving the unique needs of Non-Vessel Operating Common Carrier ("NVOCC") and freight-forwarding communities. Over the course of the past three decades, and through considerable expense and innovation, PTS developed and refined its tariff publication services, through which PTS offers a sophisticated and best-in-class online platform for publishing common carrier tariff rates. PTS's affordable and easy-to-use online platform streamlines the complex process of tariff management to ensure its clients' regulatory compliance as required by the FMC.

15. PTS's innovation, unique online platform for publishing tariff rates, and decades of experience dealing with issues relating to the needs of NVOCC and freight-forwarding communities, has allowed it to offer comprehensive services to its customers, including (1) tariff publication services to comply with statutory publication requirements of common carriers to publish tariff rates pursuant to the Federal Maritime Commission's ("FMC") complex regulatory scheme, (2) procurement of bonds and insurance for those common carriers, (3) FMC licensing, (4) Customs Trade Partnership Against Terrorism ("CTPAT") certification and advisory services, and (5) FMC audit and customs penalty consultation services. PTS can therefore provide its customers with a comprehensive one-stop-shop for their needs.

## PTS's Online Platform and Backend Server System

16. PTS developed its tariff publication services and related backend server system to facilitate the retrieval of common carrier tariff rate information and to provide that information through a unique and easy to use online platform. The presentation of this information is valuable to PTS, its customers, and gives it a competitive advantage in the marketplace. Customers of PTS are provided with a username and password to access their own tariff rate information using the particular online platform developed by PTS.

17. As described above, PTS operates and maintains a backend server system that stores proprietary and confidential data and information used by PTS to

VERIFIED COMPLAINT 5

73177000v1

operate its business and provide services to its customers. For example, PTS stores (1) accounting data, (2) manuals and procedures, (3) marketing files, (4) customer lists, (5) bond and insurance data, including bond lists, (6) license data, and (7) PTS email, among other data and files, on its servers and computer systems. This data and information is not accessible by the public, and in the case of PTS email, is stored on secured Microsoft servers.

18.     PTS stores its customer information on a server database that is searchable (by employees within PTS) by proprietary and confidential customer codes, or other information stored in the database. The manner and method of storing and retrieving customer information is valuable to the operation of PTS's business and gives it a competitive advantage in the marketplace.

## Defendants' Wrongful Conduct and Infringing Acts

19.     In early 2004, PTS hired Defendant Nam and, during his employment with PTS, became Director of Operations before his departure in December 2024. Unbeknownst to PTS, in the last two years of Defendant Nam's employment, he engaged in a premeditated plan to steal PTS's proprietary and confidential data and other information from its computers and servers. On information and belief, Defendant Nam had planned, and is currently executing his plan, to use that data and information to form his competing venture, ATS, illegally poaching PTS's customer base in the process.

20.     Starting in at least January 19, 2023, Defendant Nam, while employed by PTS, began storing PTS data onto external drives, and continued that practice until his departure in December 2024. Specifically, PTS's recent investigation of its computers and servers reveals that Defendant Nam copied at least 350 files and folders to external drives, namely, Western Digital USB Drive (Ser. No. WX92D745LL73), SanDisk Ultra USB Device (Ser. No. 4C532000040115107030), and SanDisk Extreme 55AE (Ser. No. 32323335304C343030313133). PTS has documented and preserved the source, access date/time, file name, serial number,

Docusign Envelope ID: E98BBD92-2A96-4455-8854-EC5DC3017DDA

and external drive name to which the file was downloaded, for each of the files copied by Defendant Nam. Critically, Defendant Nam *never obtained authorization from PTS to download the data onto external drives*, and *did not identify or relinquish them upon his departure from PTS*. The data on these external drives included (1) accounting data, (2) manuals and procedures, (3) marketing files, (4) customer lists and data, including "PTS Customer Email List 12-10-24.xlsx," (5) bond and insurance data, including bond lists, and (6) license data, among other data and files.

21.    PTS also examined Defendant Nam's company desktop computer that he used while employed by PTS. PTS's investigation revealed that on December 9, 2024, right before his departure, he searched the Internet for "Backup and Restore in Windows," then accessed Backup and Restore from his desktop computer's Control Panel. That same day, a Windows Image Backup was generated of the desktop computer to a Western Digital USB drive with serial number WX92D745LL73 ("Desktop Backup"). Thus, PTS has reason to believe that Defendants have a full and complete copy of all PTS user data on that computer, including PTS email from Defendant Nam's Outlook email account. Again, Defendant Nam *never obtained authorization from PTS to create the Desktop Backup*, and *did not identify or relinquish the Desktop Backup upon his departure from PTS*.

22.    Defendant Nam's wrongful access and download of proprietary and confidential information did not end after he departed PTS. PTS's investigation revealed that between at least February 7, 2025 and March 11, 2025, he repeatedly accessed PTS's proprietary online system from the IP address 98.153.50.82 using credentials for which he was not authorized. PTS is informed and believes that Defendant Nam owns, operates, and controls the website https://acetariff.com/. That website includes a tariff publication system accessed at https://data.acetariff.com/login, which shows that same login URL residing on the same IP address listed above, demonstrating that these repeated accesses were his

1    own. On March 10, 2024, he resumed his activities using another unauthorized

2    account, "FMCORG01." This particular account user ID and password is *solely*

3    *intended for the use by the FMC government agency*, and Defendant Nam had no

4    right or authority to use it to access PTS's computers and servers. PTS is informed

5    and believes that Defendants (both Defendant Nam and Defendant ATS)

6    intentionally accessed and downloaded this information without authorization to

7    illegally poach PTS's customers.

8         23.    Indeed, PTS's investigation shows a pattern of deceptive and unlawful

9    conduct. Without permission, Defendant Nam wrongfully (1) logged in to PTS's

10   proprietary and confidential server system using credentials that had access to all

11   customers' details, (2) ran a search for specific customer codes, (3) solicited the

12   searched customers and, using PTS proprietary and confidential data, persuaded

13   them to cancel their contracts with PTS and engage ATS, and (4) continued to

14   access that customer's information on PTS's system for multiple days to obtain that

15   customer's information. The customer codes and information obtained by Defendant

16   Nam is proprietary and confidential information of PTS. A search of FMC's

17   Location of Tariff Webpage (https://www2.fmc.gov/FMC1Users/scripts/

18   ExtReports.asp?tariffClass=oti) revealed that PTS's customers had moved their

19   tariff publication service to ATS contemporaneous with Defendant Nam's wrongful

20   activities. At the time this Complaint was filed, Defendants had poached at least 11

21   customers from PTS ("Customers 1-11"), and had searched for customer

22   information for at least 35 others. PTS has documented and preserved each

23   customer's name, customer code searched, the number of searches, the date of

24   access, and the date of customer cancellation with PTS, revealing Defendant Nam's

25   specific pattern of PTS server usage contemporaneous with Defendants' poaching of

26   PTS's customers. PTS also received templated emails from Customers 1-11 with the

27   same message of cancellation, which PTS is informed and believes was written by

28   Defendants.

VERIFIED COMPLAINT                                    8

73177000v1

Docusign Envelope ID: E9BBBD92-2A96-4455-8854-EC5DC3017DDA

24.     There is therefore no question that Defendants (1) downloaded and wrongfully kept proprietary and confidential data and information on external drives after departing PTS, (2) on information and belief, created and wrongfully kept a complete copy of Defendant Nam's Desktop Backup after departing PTS, and (3) illegally accessed and used proprietary and confidential PTS data, confidential customer information, and material subject to protection under U.S. copyright laws, to poach PTS's customers and develop their competing venture, ATS.

25.     Based on the foregoing, PTS is informed and believes that Defendants have wrongfully accessed and used PTS's proprietary and confidential data and information about its customers in violation of both Federal and California law. PTS is further informed and believes that Defendants have obtained PTS's online portal and used it to provide their own tariff publication system, accessed at https://data.acetariff.com/login. Defendant Nam, while employed by PTS, gained specific knowledge concerning the manner and method of PTS's unique online platform and backend computers and systems, and Defendants used this information, along with the aforementioned wrongful data accesses and downloads, to develop their competing venture, ATS, and to poach PTS's customer base in the process.

26.     These wrongful acts are tortious and they demonstrate a wanton, willful, and malicious disregard for PTS's rights and Defendants' obligations under the law.

## FIRST CAUSE OF ACTION

### [Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.*]

27.     PTS hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 26.

28.     All computers or servers used by Defendants to access electronic information of PTS were at all relevant times computers used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act

1   ("CFAA"), 18 U.S.C. § 1030(e).

2       29.    PTS's proprietary and confidential information is stored on its

3   protected computers or servers to which access is strictly controlled via various

4   security measures, including unique user IDs and password protections. All relevant

5   protected computers or servers are used in or affect interstate or foreign

6   communications or commerce.

7       30.    Defendants have violated the CFAA, 18 U.S.C. §1030(a)(2)(C), by

8   intentionally accessing a computer used for interstate commerce or communication,

9   without authorization or by exceeding authorized access to such a computer, and by

10  obtaining information from such a protected computer.

11      31.    Defendants have violated the CFAA, 18 U.S.C. §1030(a)(2)(C), by

12  intentionally accessing a computer used for interstate commerce or communication,

13  without authorization or by exceeding authorized access to such a computer, and by

14  copying and removing files from such a protected computer.

15      32.    Defendants have violated the CFAA, 18 U.S.C. §1030(a)(3), by

16  intentionally accessing a nonpublic computer of the FMC, a department or agency

17  of the United States, without authorization to access such nonpublic computer, that

18  is exclusively for the use of the Government of the United States or, in the case of a

19  computer not exclusively for such use, is used by or for the Government of the

20  United States and such conduct affects that use by or for the Government of the

21  United States. Specifically, on March 10, 2024, Defendants used an unauthorized

22  account, "FMCORG01," a particular account user ID and password that was solely

23  intended for the use by the FMC government agency.

24      33.    Defendants have violated the CFAA, 18 U.S.C. §1030(a)(4), by

25  knowingly and with intent to defraud accessing PTS's protected computers without

26  authorization, or exceeding their authorized access, and, in furtherance of the

27  intended fraud, obtaining valuable proprietary and confidential information

28  belonging to PTS having a value exceeding five thousand dollars ($5,000) in a one-

1  year period.

2      34.    Defendants committed the foregoing CFAA violations by transferring

3  PTS's proprietary and confidential information from PTS's computers and servers to

4  external drives, by creating a Desktop Backup, and/or by accessing PTS's

5  proprietary and confidential information from PTS's computers and servers using

6  unauthorized user IDs and passwords, including by using a User ID/password

7  combination for the sole use of the FMC.

8      35.    Defendant committed the acts alleged herein maliciously, fraudulently,

9  and oppressively with a wrongful intention of injury against PTS with improper

10  motives amounting to malice and a conscious disregard of PTS's rights.

11      36.    As a direct and consequent result of Defendants' intentional

12  unauthorized access of PTS's computers and servers and/or access in excess of

13  Defendants' authorization, PTS has suffered damages and costs and anticipates that

14  it will continue to suffer damages and loss.

15      37.    Unless restrained and enjoined by the Court, Defendants will continue

16  to violate the CFAA.

17      38.    PTS is entitled to maintain a civil action and obtain injunctive relief or

18  other equitable relief pursuant to 18 U.S.C. § 1030(g) including for causing of losses

19  to 1 or more persons during any 1-year period aggregating at least $5,000.00 in

20  value.

21                      **SECOND CAUSE OF ACTION**

22      **[California's Comprehensive Computer Data Access and Fraud Act,**

23                      **Pen. Code §502, *et seq.*]**

24      39.    PTS hereby repeats, realleges and incorporates by reference the

25  allegations which are contained in paragraphs 1 through 38.

26      40.    Defendants violated California's Comprehensive Computer Data

27  Access and Fraud Act ("CDAFA"), Cal. Pen. Code § 502(c)(1)(A), by knowingly

28  accessing and without permission using PTS's computers, computer systems,

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  peripherals, computer networks, and/or data stored therein to misappropriate PTS's

2  proprietary and confidential information.

3      41.    Defendants violated CDAFA, Cal. Pen. Code § 502(c)(1)(B), by

4  knowingly accessing and without permission using PTS's computers, computer

5  systems, peripherals, computer networks, and/or data stored therein, to wrongfully

6  obtain and control PTS's data, property and/or other information of monetary value.

7      42.    Defendants violated CDAFA, Cal. Pen. Code § 502(c)(2), by

8  knowingly accessing and without permission taking, copying and/or making use of

9  PTS's data from PTS's computers, computer systems and computer networks and

10  servers.

11      43.    Defendants violated CDAFA, Cal. Pen. Code § 502(c)(2), by

12  knowingly accessing and without permission taking, copying and/or making use of

13  PTS's data from PTS's computers, computer systems and computer networks and

14  servers.

15      44.    Defendants' unauthorized access and use has damaged and caused loss

16  to PTS.

17      45.    Defendants acted with oppression, fraud, and malice, warranting an

18  award of punitive damages in addition to the actual damages suffered by PTS as

19  provided by Cal. Pen. Code § 502(e)(4), an award of reasonable attorney's fees

20  pursuant to Cal. Pen. Code § 502(e)(2), and as a result of the damage, losses, and

21  harm caused to PTS, an award of compensatory damages pursuant to Cal. Pen. Code

22  § 502(e)(1).

23      46.    Defendants' conduct also caused irreparable and incalculable harm and

24  injuries to PTS, and unless enjoined, will cause further irreparable and incalculable

25  injury, for which PTS has no adequate remedy at law.

26              **THIRD CAUSE OF ACTION**

27          **[Stored Communications Act, 18 U.S.C. §§ 2701,** *et seq.***]**

28      47.    PTS hereby repeats, realleges and incorporates by reference the

VERIFIED COMPLAINT                    12

73177000v1

allegations which are contained in paragraphs 1 through 46.

48.    PTS maintains electronic networks and facilities through which authorized users, for authorized purposes, can utilize electronic communication services, including email, and voicemail communication services, including voice mails.

49.    PTS's e-mail service and voicemail service stores electronic and voicemail communications in electronic storage incidental to the transmission of the communications and/or for backup purposes.

50.    Defendants were not authorized to use any electronic communication service of PTS for purposes other than the legitimate business purposes of PTS. Any actions of Defendants in accessing or using PTS's electronic communications services that were not undertaken for the legitimate business purposes of PTS were in excess of their authorization to do so.

51.    Defendants intentionally and without authorization, or in excess of their authorization, accessed PTS's secure systems, created and, on information and belief, later used the Desktop Backup, and obtained electronic communications while in electronic storage in violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701(a).

52.    Defendants' actions in violation of the SCA were willful and intentional.

53.    PTS has been aggrieved by Defendants' violation of the SCA, and therefore, PTS is entitled to relief and damages from Defendants pursuant to 18 U.S.C. § 2707(a) and (b), including punitive damages and attorneys' fees.

### FOURTH CAUSE OF ACTION

### [Intentional Interference with Contractual Relations]

54.    PTS hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 53.

55.    Between 2006 and the present, PTS entered into valid contracts with

Docusign Envelope ID: E9BBBD92-2A96-445E-8854-FC5DC3017DDA

1    Customers 1-11 to perform tariff rate publication services.

2        56.    PTS is informed and believes that while employed by PTS, Defendant

3    Nam was aware of PTS's contracts with Customers 1-11.

4        57.    PTS is informed and believes that Defendant Nam obtained financial

5    information while employed by PTS, and wrongfully accessed and downloaded

6    customer information from PTS's computers and servers after departing PTS by

7    searching for information using proprietary and confidential customer codes, such

8    that it knew the terms of PTS's contracts with Customers 1-11.

9        58.    Defendants, without legal justification, disrupted the performance of

10    this contract, interfering with it when Defendants solicited the searched customers

11    and, using PTS proprietary data, persuaded them to cancel their contracts with PTS

12    and engage ATS's competing services. Notably, a search of FMC's Location of

13    Tariff Webpage (https://www2.fmc.gov/FMC1Users/scripts/

14    ExtReports.asp?tariffClass=oti) revealed that PTS's customers had moved their

15    tariff publication service to ATS contemporaneous with Defendant Nam's wrongful

16    activities. Further, PTS also received templated emails from Customers 1-11 with

17    the same message of cancellation, which PTS is informed and believes was written

18    by Defendants.

19        59.    As a result of Defendants' wrongful interferences, Defendants

20    prevented performance under the PTS contracts with Customers 1-11 and poached

21    those customers for ATS's competing venture.

22        60.    Defendants intended to disrupt the performance of PTS's contracts with

23    Customers 1-11 and/or knew that disruption of performance was certain or

24    substantially certain to occur.

25        61.    As a direct and proximate result of such interference, PTS has been

26    harmed in an amount to be proven with certainty at trial.

27        62.    Defendants' conduct was a substantial factor in causing PTS harm.

28        63.    By performing the foregoing acts, Defendants acted with the intent to

Jeffer Mangels
Butler & Mitchell LLP

JMBM

injure PTS and acted with malice, oppression, and/or fraud. Alternatively, the acts of Defendants were despicable and in conscious disregard of the probability of damage to PTS and, thus, the conduct alleged herein supports an award of punitive damages pursuant to Civil Code § 3294 in an amount designed to punish Defendants and to deter such conduct in the future.

## **FIFTH CAUSE OF ACTION**

### **[Defend Trade Secrets Act, 18 U.S.C. § 1836]**

64. PTS hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 63.

65. This is a cause of action for misappropriation of trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, based on the wrongful misappropriation, use, and/or disclosure of PTS's trade secrets as embodied in PTS's proprietary and confidential information, including but not limited to PTS's online platform, customer data and information, financial and accounting data, marketing data, and bond data, all of which is used in or intended for use in both interstate and foreign commerce.

66. PTS's trade secrets at issue in this action include (1) the backend system configured to operate PTS's online platform for tariff rates publication, (2) customer lists and customer data and information stored on PTS's computers and servers, (3) financial and accounting data revealing PTS's pricing, services, and offering to its customers, (4) marketing data, including strategic market share data and reports, and (5) bond lists, identifying customer bonds, costs, profit margin, and due dates, among other information.

67. PTS's confidential information embodied in these trade secrets operate as trade secrets because they derive independent economic value from not being generally known to the public or to others who can obtain economic value from their disclosure or use.

68. Defendants gained access to PTS's trade secrets while Defendant Nam

73177000v1

Docusign Envelope ID: E9BBBD92-2A96-445E-8B54-FC5DC3917DDA

was employed by PTS, and were under an obligation to maintain the secrecy of PTS's trade secret information while employed, and thereafter. Further, Defendants gained access to PTS's trade secrets after Defendant Nam departed PTS, by wrongfully gaining access to PTS's computers and servers.

69.    Defendants have used and disclosed and continue to use and disclose PTS's trade secrets without PTS's consent or permission, in an attempt to benefit Defendants by using the trade secrets to develop its competing venture, ATS.

70.    Defendants have used PTS's trade secrets maliciously and in willful and conscious disregard of the rights of PTS.

71.    Defendants are each liable for the wrongful acts of the other Defendants, and Defendants have continued to perpetrate the aforementioned wrongful acts by wrongfully using PTS's trade secrets, including continuing malicious use and disclosure and in willful and conscious disregard of the rights of PTS.

72.    As a direct and proximate result of Defendants' willful, improper, and unlawful use and disclosure of PTS's trade secrets, PTS has suffered injury and continues to be damaged. PTS will continue to be irreparably damaged unless Defendants are enjoined from further use and disclosure of PTS's trade secrets.

73.    The aforementioned acts of Defendants in wrongfully misappropriating PTS's trade secrets were and continue to be willful and malicious, warranting an award of exemplary damages, as provided by 18 U.S.C. § 1836(b)(3)(C), and an award of attorneys' fees, as provided by 18 U.S.C. § 1836(b)(3)(D).

## SIXTH CAUSE OF ACTION

**[California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq*.]**

74.    PTS hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 73.

75.    This is a cause of action for misappropriation of trade secrets under California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*, based on the

wrongful misappropriation, use, and/or disclosure of PTS's trade secrets as embodied in PTS's proprietary and confidential information, including but not limited to PTS's online platform, customer data and information, financial and accounting data, marketing data, and bond data, all of which is used in or intended for use in both interstate and foreign commerce.

76.    PTS's trade secrets at issue in this action include (1) the backend system configured to operate PTS's online platform for tariff rates publication, (2) customer lists and customer data and information stored on PTS's computers and servers, (3) financial and accounting data revealing PTS's pricing, services, and offering to its customers, (4) marketing data, including strategic market share data and reports, and (5) bond lists, identifying customer bonds, costs, profit margin, and due dates, among other information.

77.    PTS's confidential information embodied in these trade secrets operate as trade secrets because they derive independent economic value from not being generally known to the public or to others who can obtain economic value from their disclosure or use.

78.    Defendants gained access to PTS's trade secrets while Defendant Nam was employed by PTS, and were under an obligation to maintain the secrecy of PTS's trade secret information while employed, and thereafter. Further, Defendants gained access to PTS's trade secrets after Defendant Nam departed PTS, by wrongfully gaining access to PTS's computers and servers.

79.    Defendants have used and disclosed and continue to use and disclose PTS's trade secrets without PTS's consent or permission, in an attempt to benefit Defendants by using the trade secrets to develop its competing venture, ATS.

80.    Defendants have used PTS's trade secrets maliciously and in willful and conscious disregard of the rights of PTS.

81.    Defendants are each liable for the wrongful acts of the other Defendants, and Defendants have continued to perpetrate the aforementioned

wrongful acts by wrongfully using PTS's trade secrets, including continuing malicious use and disclosure and in willful and conscious disregard of the rights of PTS.

82.     As a direct and proximate result of Defendants' willful, improper, and unlawful use and disclosure of PTS's trade secrets, PTS has suffered injury and continues to be damaged. PTS will continue to be irreparably damaged unless Defendants are enjoined from further use and disclosure of PTS's trade secrets.

83.     The aforementioned acts of Defendants in wrongfully misappropriating PTS's trade secrets were and continue to be willful and malicious, warranting an award of exemplary damages, as provided by Civ. Code § 3426.3(c), and an award of attorneys' fees, as provided by Civ. Code. § 3426.4.

## SEVENTH CAUSE OF ACTION

### [Unfair Business Practices Under Cal. Bus. & Prof. Code §§ 17200, *et seq.*]

84.     PTS hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 83.

85.     Defendants engaged in unlawful, unfair, and/or fraudulent business acts and practices in violation of California Business & Professions Code §§ 17200 *et seq.*

86.     Defendants engaged in a pattern of unlawful business acts and practices designed to wrongfully take PTS's proprietary and confidential information, including its trade secrets, PTS's data stored on its computers and servers, and to interfere with PTS's contracts with Customers 1-11, as well as poach them using proprietary and confidential information to form their own venture, ATS.

87.     Defendant Nam engaged in a premeditated plan that PTS is informed and believes started within two years before Defendant Nam departed PTS, and Defendants continue to perpetrate this plan, as detailed herein, to this day. Defendants' plan violated multiple federal and California statutes, and the California common law, in furtherance of their plan, and constitutes a concerted and systematic

effort to gain access to PTS's data and information, to PTS's detriment and injury.

88.    As a direct and proximate result of Defendants' wrongful acts, PTS has been harmed in an amount to be proven with certainty at trial.

### EIGHTH CAUSE OF ACTION

### [Breach of Duty of Loyalty]

### (against Defendant Nam)

89.    PTS hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 88.

90.    Defendant Nam, by virtue of his status as Director of Operations at PTS, owed a duty of undivided loyalty to PTS, including a duty not to favor his own interests over those of PTS and to place PTS's interests ahead of Defendant Nam's own.

91.    PTS is informed and believes and thereon alleges that in contravention of the duties owed, Defendant Nam knowingly acted in his own interests and against and in direct conflict with the best interests of PTS by engaging in a premeditated plan to wrongfully take PTS's proprietary and confidential information, including its trade secrets, PTS's data stored on its computers and servers, and to interfere with PTS's contracts with Customers 1-11.

92.    PTS is informed and believes and thereon alleges that in contravention of the duties owed, Defendant Nam knowingly took and retained files that he downloaded while employed by PTS, created and kept a Desktop Backup of his PTS computer, and knowingly accessed PTS's computers and servers and downloaded customer information after departing PTS, to use that data and information to develop his competing venture, ATS.

93.    PTS is informed and believes and thereon alleges that had Defendant Nam resigned as soon as he embarked in activities that conflicted with the best interests of PTS or had disclosed his activities to PTS, PTS would not have continued to pay Defendant Nam his salary and benefits.

JMBM | Jeffer Mangels Butler & Mitchell LLP

94.     PTS is informed and believes and thereon alleges that had PTS learned of Defendant Nam's breach of undivided loyalty to PTS, PTS would have terminated Defendant Nam's employment and hired a replacement employee, and it would have had that replacement employee's undivided loyalty in return. Defendant Nam's breach of undivided loyalty deprived PTS of that vital benefit.

95.     As a direct and proximate result of PTS's conduct, PTS has suffered damages in the amount of Defendant Nam's salary and benefits during the time that Defendant Nam breached his duty of undivided loyalty to PTS, from at least January 19, 2023 to December 31, 2024, in the amount of $419,209.58.

96.     In acting as herein above alleged, Defendant Nam was guilty of fraud, oppression and malice and acted with intent to vex, injury or annoy, and with conscious disregard of PTS's rights. PTS is therefore entitled to recover punitive or exemplary damages against Defendant Nam in an amount to be determined at trial, according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, PTS prays for the following relief:

1.     A judgment that Defendants are liable on all causes of action alleged herein;

2.     An order requiring Defendants to account for all gains, profits and advantage derived from their misappropriation of PTS's confidential, proprietary and/or trade secret information;

3.     An order requiring Defendants to disgorge all profits earned from their unlawful conduct, together with restitution to PTS arising from Defendants' unlawful conduct;

4.     An order awarding actual damages according to proof;

5.     An order awarding exemplary and/or punitive damages to the extent allowed by law and in an amount according to proof;

6.     An order awarding pre-judgment and post-judgment interest;

7.      An order awarding attorneys' fees, costs and expenses;

8.      Preliminary and permanent injunctive relief pursuant to which Defendants, and their employees, officers, directors, and/or representatives, and all persons acting in concert or participating with it are ordered, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows:

    i.      From any and all use or disclosure of any information or data obtained and kept while employed by PTS, including, but not limited to (1) accounting data, (2) manuals and procedures, (3) marketing files, (4) customer lists and data, including "PTS Customer Email List 12-10-24.xlsx," (5) bond and insurance data, (6) license data, and (7) any other PTS business information in Defendants' possession, custody, or control.

    ii.     From any and all use of Defendants' Windows Image Backup that was generated of Defendant Nam's desktop computer to a Western Digital USB drive with serial number WX92D745LL73 during Defendant Nam's employment by PTS.

    iii.    From any and all use of any information or data obtained from PTS's computers or servers after leaving PTS, including any customer information obtained from PTS's online system.

    iv.     From any further developments of Defendant's business venture, ATS.

    v.      From making any and all contact, or attempts to contact, any current or former customers of PTS.

    vi.     From refraining from any contact, or attempts to contact, any employee or principal of PTS, including but not limited to PTS's founders.

    vii.    Immediately taking any and all affirmative steps to identify and preserve, and cease any operations that would result in the destruction of, information or documents that may pertain to any confidential or proprietary information or data, including items (i)-(iii) above, and not

Jeffer Mangels Butler & Mitchell LLP

deleting any and all of those items, including those stored on Western
Digital USB Drive (Ser. No. WX92D745LL73), SanDisk Ultra USB
Device (Ser. No. 4C532000040115107030), and SanDisk Extreme
55AE (Ser. No. 32323335304C343030313133).

viii.    Immediately accounting and inventorying any and all data and
information obtained from PTS, including but not limited to items (i)-
(iii) above, and thereafter, at PTS's direction, deliver all such items to
PTS.

ix.    Immediately submitting to a full audit of Defendants' tariff reporting
system, including all websites, webpages, databases or servers,
computers or other devices, or any other related data or information
associated with Defendants' tariff reporting system.

x.    Turning over to the Court any proceeds that Defendants have received
from their misappropriation of PTS's trade secrets and proprietary and
confidential information and other unlawful conduct, including all
proceeds received by Defendant ATS, such proceeds to be held in
constructive trust until the conclusion of this litigation.

9.    For such other and further relief as the Court may deem just and proper.

DATED:  April 11, 2025              Respectfully submitted,

JEFFER MANGELS BUTLER &
MITCHELL LLP
R. SCOTT BRINK
JOSEPH J. MELLEMA

By: _____
                    R. SCOTT BRINK
Attorneys for Paramount Tariff Services,
Inc.

## DEMAND FOR JURY TRIAL

Plaintiff Paramount Tariff Services, Inc. hereby demands a trial by jury in the above-captioned matter on all matters so triable.

DATED:  April 11, 2025        JEFFER MANGELS BUTLER &
MITCHELL LLP
R. SCOTT BRINK
JOSEPH J. MELLEMA


By: _____

              R. SCOTT BRINK
       Attorneys for PARAMOUNT TARIFF SERVICES, INC.

## **VERIFICATION**

I am Julie Kim of Paramount Tariff Services, Inc., a party to this action, and I declare that I have read the foregoing complaint and that the statements therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 11, 2025.


Julie Kim
_____
Print Name of Signatory

Signed by:
Julie Kim
F2474337329C46C...
_____
Signature