

**BJORGUM LAW, PC**
A. Eric Bjorgum (SBN: 198392)
119 E. Union Street, Suite C
Pasadena, CA 91103
Telephone: 213.596.6390
Fax: 213.596.6399
Email: eric.bjorgum@bjorgumlaw.com

Attorneys for Defendants
ACE TARIFF SOLUTIONS, INC. and RAY NAM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| PARAMOUNT TARIFF SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ACE TARIFF SOLUTIONS, INC. and RAY NAM, <br><br> Defendants. | Case No. 2:25-CV-03242-ODW-E <br><br> **DEFENDANTS' REPLY RE MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT [FRCP 12(b)(6)]** <br><br> Date: July 21, 2025 <br> Time: 1:30 pm <br> Assigned to: Hon. Otis D. Wright II <br> Courtroom: 5D <br> First Street Courthouse <br> 350 W. 1st Street, 5th Floor <br> Los Angeles, CA. 90012 |

DEFENDANTS' REPLY RE MOTION TO DISMISS COMPLAINT

## I.  Preliminary Statement

Rather than offer clarity to solve the riddle of its Complaint, Plaintiff's opposition only highlights the problem:  what exactly are the trade secrets at issue here? This issue needs to be decided before discovery begins because, otherwise, we will have far-reaching discovery into whether Plaintiff's "backend system" qualifies as a trade secret *in its entirety.*  Or if its "customer data" are all trade secrets.  Plaintiff has to do a better job defining the trade secrets that it protected. Otherwise, this case is going to be a mess.  Now is the time, early in the case, for Plaintiff to make a decision, so that the parties and Court can avoid being mired in endless motion practice about what was "secret" in Plaintiff's business, and if it was stolen.

## II.    Argument

### A.  Plaintiff's Arguments Do Nothing To Narrow The Scope of the Trade Secret(s) Beyond General Platitudes

Plaintiff's general identification of its trade secrets fails to mention that much of the information it identifies as "secret" is required for public disclosure in this field, and is thus not separate "from matters of general knowledge in the the trade."  Defendants generally agree that, at a minimum, a claim for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.' " *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). Defendants further agree that the trade secret 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.' " *Id.* at 1164–65 (quoting *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989)).

1    However, that is not the end of the matter.  The standard is more specific.
2  One Court stated:

3      The plaintiff must "clearly define what it claims to own" and cannot
4      "fall back on vague hand waving." *Agency Solutions.Com, LLC v.*
5      *TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011)
6      (quoting *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210,
7      221 (2010)). To prevent "vague hand waving," the plaintiff is required
8      to make two showings: "First, the plaintiff must clearly identify what
9      the 'thing' is that is alleged to be a trade secret, and second, the
10      plaintiff must be able to clearly articulate why that 'thing' belongs in
11      the legal category of trade secret." *Id.* "Put another way, '[a] plaintiff
12      must do more than just identify a kind of technology and then invite
13      the court to hunt through the details in search of items meeting the
14      statutory definition [of a trade secret].' " *X6D Ltd. v. Li-Tek Corps.*
15      *Co.*, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012) (quoting
16      Bunnell v. MPAA, 567 F. Supp. 2d 1148, 1155 (C.D. Cal. 2007)).
17      Last, describing trade secrets with particularity is necessary "to permit
18      the defendant [and the court] to ascertain at least the boundaries
19      within which the secret[s] lie." *Id.* (quoting *Diodes, Inc. v. Franzen*,
20      260 Cal. App. 2d 244, 253 (1968)).
21  *MicroVention, Inc. v. Balt USA, LLC,* No. 820CV02400JLSKES, 2023 WL
22  4316880, at *4 (C.D. Cal. May 3, 2023).

23      Here, Plaintiff fails to inform the Court that **in relevant trade, the**
24  **applicable law actually requires much of the data identified as "trade**
25  **secrets" to published for public consumption.** Per its complaint, Plaintiff is in
26  the business of  "serving the unique needs of Non-Vessel Operating Common
27
28

Carrier ("NVOCC") and freight-forwarding communities."[1]  (Complaint, ¶ 14.)

Specifically, Plaintiff publishes "tariffs," which are legally-mandated statements about its clients--the companies who broker available space on large shipping vessels.

Per the Federal Maritime Commission, NVOCC's are required to publish a "tariff" governed by the Code of Federal Regulations ("CFR").[2]  46 CFR § 520.3 provides:

> **§ 520.3 Publication responsibilities.**
>
> (a) ***General.*** Unless otherwise exempted or excepted by [§ 520.13](#), all common carriers and conferences must keep open ***for public inspection*** in automated tariff systems tariffs ***showing all rates, charges, classifications, rules, and practices between all points or ports on their own routes*** and on any through transportation route that has been established.

(46 CFR § 520.3, emphasis supplied.)

Next, 46 CFR § 520.4 ("Tariff Contents") provides that all tariffs must, *inter alia*:

---

[1] NVOCC's are "non-vessel-operating common carriers (NVOCC)."  They "dispatch shipments from the United States via common carriers and books or otherwise arranges space for those shipments on behalf of shippers; ocean freight forwarders prepare and process documentation and perform related activities pertaining to shipments."   https://en.wikipedia.org/wiki/Freight_forwarder#USA

[2] https://www.fmc.gov/about/bureaus-offices/bureau-of-enforcement-investigations-and-compliance-beic/office-of-compliance/ocean-transportation-intermediaries/#publication-of-tariffs

(3) State the level of compensation, if any, to be paid by a carrier or conference to an ocean freight forwarder, as defined by 46 U.S.C. 40102(19);

(4) State separately each terminal or other charge, privilege, or facility under the control of the carrier or conference and any rules that in any way change, affect, or determine any part or the total of the rates or charges;

(5) Include sample copies of any bill of lading showing legible terms and conditions, contract of affreightment, and/or other document evidencing the transportation agreement;

Because all of this information is required to be public, Plaintiff cannot blithely identify its "trade secrets" as "tariff rates," "customer lists and customer data" or "financial and accounting data," to cite just a few examples.

It may be remembered that, according to Plaintiff, its trade secrets include (1) the backend system configured to operate PTS's online platform for tariff rates publication, (2) customer lists and customer data and information stored on PTS's computers and servers, (3) financial and accounting data revealing PTS's pricing, services, and offering to its customers, (4) marketing data, including strategic market share data and reports, and (5) bond lists, identifying customer bonds, costs, profit margin, and due dates, among other information.

(Dkt. 1 at ¶ 66; *id.* at ¶ 76 (same).

Given this overlap, it is clear that Plaintiff has not sufficiently identified information that would be secret to those "skilled in the trade." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)) (trade secret must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are

1  skilled in the trade, and to permit the defendant to ascertain at least the boundaries
2  within which the secret lies").

3      Plaintiff's argument is like *Space Data Corp. v. X*, where the Court found
4  the documents provided were not enough to establish a trade secret because they
5  "merely provide a high-level overview of Space Data's purported trade secrets,
6  such as 'data on the environment in the stratosphere' and 'data on the propagation
7  of radio signals from stratospheric balloon-based transceivers.' FAC ¶¶ 19–20;
8  Ex. D & E to FAC, ECF 28-6.[1] These allegations do not satisfy the Rule 8
9  pleading requirements, as they do not even give the Court or Defendants notice of
10 the boundaries within which the secret lies." *Id.,* 2017 WL 5013363, at *2 (N.D.
11 Cal. Feb. 16, 2017).

12     This is the same situation.  Even if Defendants copied the entire "backed
13 system configured to operate PTS's online platform for tariff rates publication,"
14 46 CFR § 520.3 provides that "all rates" must be published. As another example,
15 "customer lists" can't be trade secrets because the identify of the NVOCC's is
16 listed publicly.

17

18     The Motion specifically pointed out how term "backend" is meaningless
19 here, and it also pointed out case such as *National Pharmacy* where reference to
20 "customers lists and customer data" and "pricing" were insufficient.  Plaintiff
21 doesn't deal with those arguments.  It simply asserts that it has adequately alleged
22 protection If Plaintiff had a real idea what was allegedly misappropriated, now
23 would have been the time to identify it.

24     The Ninth Circuit has noted that "Pursuant to California Code of Civil
25 Procedure Section 2019.210, plaintiffs must identify their trade secrets with
26 "reasonable particularity" prior to commencing discovery. Cal. Civ. Code §
27 2019.210. Federal courts have applied the state provision in federal cases."
28 *InteliClear, LLC*, 978 F.3d at 658. To hold otherwise would encourage forum

1   shopping. *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal.

2   June 14, 2012) (*citing Gabriel Technologies Corp. v. Qualcomm Inc.*, 2012 WL

3   849167 (S.D. Cal., March 13, 2012) and *Computer Economics, Inc. v. Gartner*

4   *Group, Inc.*, 50 F.Supp.2d 980, 986 (S.D. Cal., May 25, 1999)).

5   **B.  Plaintiff's Claims Are Preempted By the CUTSA**

6   **1.  Plaintiff's Unfair Competition Claim Is Preempted**

7   Contradicting the first part of its opposition, to avoid pre-emption of its

8   Unfair Competition Claim, Plaintiff suddenly argues for the narrowness of its

9   trade secrets.  Plaintiff cannot have it both ways. Somehow for Plaintiff, taking

10  customer and marketing "trade secrets" is fundamentally different than "soliciting

11  opportunities."

12  It is not different; it is part of the "same nucleus of facts" preemption of

13  *K.C. Multimedia*, 171 Cal. App. 4th at 961-62; *Alta Devices, Inc. v. LG Elecs.,*

14  *Inc.*, 343 F. Supp. 3d 868, 888 (N.D. Cal. 2018) (dismissing UCL claim where

15  plaintiff alleged that defendant "engaged in unlawful, unfair, and/or fraudulent

16  business acts and practices. Such acts and practices include, but are not limited to,

17  misappropriating [plaintiff's] proprietary, trade secret and Confidential

18  Information."); *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1064

19  (N.D. Cal. 2017); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035

20  (N.D. Cal. 2005). Prior to passage of the federal DTSA, the *K.C. Multimedia*

21  Court stated: "In sum, we agree with the federal cases applying California law,

22  which hold that section 3426.7, subdivision (b), preempts common law claims that

23  are 'based on the same nucleus of facts as the misappropriation of trade secrets

24  claim for relief.'" 171 Cal. App. 4th at 961.

25  *See, e.g., Monolithic Power Sys., Inc. v. 02 Micro Int'l., Ltd.*, 2007 WL

26  801886, *6 (N.D. Cal. 2007) (granting summary judgment in 17200 claim where

27  "the allegations that form the predicate acts for unfair competition are based on

28

the same nucleus of facts as the allegations in [the plaintiff's] pleading asserting a claim of trade secret misappropriation").

### 2. __Plaintiff's "Breach of Loyalty" Claim Is Preempted__

Courts will not hesitate to dismiss breach of loyalty claims based on CUTSA preemption where they involve the same nucleus of facts. The *Zayo Group* case doesn't help because there the Defendants were actually operating a competing business, by improperly utilizing confidential information acquired during the course of their employment with Zayo, and by soliciting Zayo business opportunities." 2013 WL 12201401, *4. Here, there is no allegation that Defendant was operating before leaving Plaintiff's employ.

### 3. __Plaintiff's Interference Claim Is Preempted__

Courts will dismiss interference claims based on the same nucleus of facts as a trade secrets claim. *See Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 479 (N.D. Cal. 2020). Again, in *Alberts, t*he fact that the defendant not only allegedly *took* secret or confidential information, but also *used* it to wrongfully interfere with the plaintiff's customer relationships, **was insufficient** to save the claim in *Albert's* from preemption.  Thus, the worst-case-scenario for Defendant does not avoid preemption for Plaintiff.

### __III.  Conclusion__

For the foregoing reasons, Defendants respectfully request that the motion be granted and the fourth, fifth, sixth, seventh, and eighth causes of action be dismissed.

Dated:  July 7, 2025              BJORGUM LAW PC


                                  By:  /s/ Eric Bjorgum/_____
                                       Eric Bjorgum
                                  Attorneys for Defendants Ace Tariff Solutions,
                                  Inc., and Ray Nam

---