O

# United States District Court
# Central District of California

| | |
|---|---|
| PARAMOUNT TARIFF SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACE TARIFF SOLUTIONS, INC. et al,<br><br>Defendants. | Case № 2:25-cv-03242-ODW (Ex)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [12]** |

## I.     INTRODUCTION

Plaintiff Paramount Tariff Services, Inc. brings this suit against Defendants Ace Tariff Solutions, Inc. and Ray Nam, asserting claims arising from Defendants' alleged misappropriation of Paramount Tariff's trade secrets. (Compl., Dkt. No. 1.) Defendants now move to dismiss Paramount Tariff's claims for misappropriation of trade secrets under federal and state law, intentional interference with contractual relations, violation of California's Unfair Competition Law ("UCL"), and breach of the duty of loyalty. (Mot. Dismiss ("Motion" or "Mot.") 1–2, Dkt. No. 12.) For the reasons discussed below, the Court **GRANTS IN PART** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Paramount Tariff developed a confidential and proprietary system to publish tariff rates for its freight-forwarding and common-carrier customers. (Compl. ¶¶ 2–3.) Its customers can access their tariff rates by logging into this system. (*Id.* ¶ 16.) Paramount Tariff also maintains a backend server system where it stores confidential and proprietary data, including the trade secrets at issue here. (*Id.* ¶ 17.)

In 2004, Paramount Tariff hired Nam. (*Id.* ¶ 19.) Nam eventually rose to the position of Director of Operations, a role that gave him access to Paramount Tariff's proprietary and confidential system and data. (*Id.* ¶¶ 4, 19.) From January 2023 through December 2024, Nam downloaded and copied Paramount Tariff's data, without authorization, onto external drives. (*Id.* ¶ 20.) After Nam left Paramount Tariff in December 2024, he continued to access Paramount Tariff's proprietary online system to obtain customer information. (*Id.* ¶¶ 20, 22–23.) Using this ill-gotten information, Nam formed a competing venture, Ace Tariff Solutions, and poached at least eleven Paramount Tariff customers. (*Id.* ¶¶ 4–5.)

On April 11, 2025, Paramount Tariff brought this action against Defendants, alleging (1) violation of the federal Computer Fraud and Abuse Act; (2) violation of California's Comprehensive Computer Data Access and Fraud Act; (3) violation of the federal Stored Communications Act; (4) intentional interference with contractual relations; (5) trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA"); (6) trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"); (7) unfair business practices under California's UCL; and (8) breach of the duty of loyalty. (*Id.* ¶¶ 27–96.) Defendants now move to dismiss the fourth, fifth, sixth, seventh, and eighth causes of action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. 4–13.)

---

[2] All factual references derive from Paramount Tariff's Complaint, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.      LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009) (citation modified).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend, unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Defendants move to dismiss Paramount Tariff's fifth and sixth causes of action, brought under the DTSA and the CUTSA, for failure to identify the trade secrets at issue with requisite particularity. (Mot. 4–8.) Additionally, Defendants move to dismiss Paramount Tariff's fourth, seventh, and eighth causes of action as preempted by the CUTSA. (*Id.* at 8–13.)

### A. Trade Secret Misappropriation—DTSA and CUTSA

Paramount Tariff brings its trade secret misappropriation claims under both the federal DTSA and the CUTSA. (Compl. ¶¶ 64–83.) These statutes "share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("Courts have analyzed these claims together because the elements are substantially similar.") To assert trade secret misappropriation under either statute, a plaintiff must allege that: (1) the plaintiff owned a trade secret, (2) the defendant misappropriated the trade secret, and (3) the defendant's actions damaged the plaintiff. *Alta Devices*, 343 F. Supp. 3d at 877. In their Motion, Defendants argue only that Paramount Tariff has failed to allege the trade secrets at issue here with particularity.[3] (Mot. 4–8.)

To sufficiently allege a trade secret, "a plaintiff need not spell out the details of the trade secret," but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade." *Alta Devices*, 343 F. Supp. 3d at 880–81 (citation modified). Consequently, a plaintiff only needs to "provide sufficient identification so that the court and the defendant may ascertain at least the boundaries within which the secret lies." *WeRide Corp. v. Kun*

---

[3] In their reply brief, Defendants argue for the first time that federal regulations "require[] much of the data identified [by Paramount Tariff] as 'trade secrets' to be published for public consumption." (Reply, Dkt. No. 16.) Because Defendants did not raise this argument in their Motion, the Court declines to consider it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

*Huang*, 379 F. Supp. 3d 834, 846 (N.D. Cal. 2019) (citation modified).  "Allegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectable trade secrets are insufficient to state a claim."  *Novation Sols., Inc. v. Issuance Inc.*, No. 2:23-cv-00696-WLH (KSx), 2023 WL 5505908, at *7 (C.D. Cal. June 27, 2023) (citation modified).  A plaintiff may also "not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial."  *InteliClear*, 978 F.3d at 658.

In its Complaint, Paramount Tariff identifies five purported trade secrets:

> (1) the backend system configured to operate Paramount Tariff's online platform for tariff rates publication, (2) customer lists and customer data and information stored on Paramount Tariff's computers and servers, (3) financial and accounting data revealing Paramount Tariff's pricing, services, and offering[s] to its customers, (4) marketing data, including strategic market share data and reports, and (5) bond lists, identifying customer bonds, costs, profit margin, and due dates, among other information.

(Compl. ¶ 66.)

Reaching only Paramount Tariff's description of "bond lists," the Court finds that Paramount Tariff sufficiently identifies the bond lists with particularity.  In its description of bond lists, Paramount Tariff does not "simply rely" on catchall phrases and broad categories.  *InteliClear*, 978 F.3d at 658.  Rather, Paramount Tariff describes precisely what the bond lists are.  According to Paramount Tariff's Complaint, the bond lists that Paramount Tariff believes Nam stole "identify[] customer bonds, costs, profit margin, and due dates."  (Compl. ¶ 66.)  This description goes well beyond a "catchall phrase" and details the type of information encompassed by this trade secret.  *InteliClear*, 978 F.3d at 658.  The description also distinguishes "bond lists" from "matters of general knowledge in the trade."  *Alta Devices*, 343 F. Supp. 3d at 881.  Specifically, the description indicates that the bond lists include specific and private information regarding the bonds that Paramount Tariff's

customers hold, rather than generic information about bonds. Thus, this description serves as sufficient identification of the "boundaries" of Paramount Tariff's bond lists. *WeRide*, 379 F. Supp. 3d at 846.

The cases on which Defendants rely are inapposite and unpersuasive. (Mot. 6–8.) In *National Specialty Pharmacy, LLC v. Padhye*, the court found that the trade secrets alleged there—"vendor and partner information, proprietary formulas, business processes, pricing strategies, pricing data, marketing methods, [and] other data"—were insufficient because they were all "'catchall' categories of the *kinds* of trade secrets that might be at issue." 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (emphasis in original). Similarly, in *Genasys Inc. v. Vector Acoustics, LLC*, the court concluded that descriptions such as "Army Confidential Presentation Materials and additional Confidential Client Data, the Proposed Product Modifications, the Customer Network, and the Pricing Information" were insufficient to allege a trade secret. 638 F. Supp. 3d 1135, 1151 (S.D. Cal. 2022).

The common defect in both cases is that the alleged trade secrets consisted only of "broad, undefined categories" and "catchall phrases." For example, in *Padhye*, each identified trade secret—vendor and partner information, proprietary formulas, business processes, etc.—contained no further description. 734 F. Supp. 3d at 929. This left the court and defendant with no way of knowing what the phrases "vendor and partner information" and "business processes" meant, and what the alleged trade secret encompassed. *See id*; *see also Genasys*, 638 F. Supp. 3d at 1135. Here, in contrast, Paramount Tariff specifically describes the information in the bond lists that it alleges Nam stole, including bond cost, profit margin associated with each bond, and when each bond is due. (Compl. ¶¶ 66.) Had Paramount Tariff only generally alleged that Nam stole "bond lists" without appending a specific description, then Paramount Tariff's identification of bond lists would be deficient. *Genasys*, 638 F. Supp. 3d at 1151 (finding "Customer Network" and "Pricing Information"

insufficient).  However, Paramount Tariff provides sufficient detail to put Defendants on notice regarding the bond lists.

As Paramount Tariff sufficiently identifies "at least one trade secret with sufficient particularity," its misappropriation claims survive, and the Court need not determine whether Paramount Tariff sufficiently identifies any other trade secret.  *See Nifty Techs., Inc. v. Mango Techs., Inc.*, No. 24-cv-194 JLS (AHG), 2025 WL 1826430, at *7 (S.D. Cal. July 1, 2025) ("[A]t the pre-discovery stage, a plaintiff's 'burden is only to identify at least one trade secret with sufficient particularity to create a triable issue.'" (quoting *InteliClear*, 978 F.3d at 659)).  Thus, the Court declines to dismiss Paramount Tariff's misappropriation claims.

**B.     Preemption**

Defendants next argue that the CUTSA preempts Paramount Tariff' fourth, seventh, and eighth claims because they are based on the same nucleus of facts as the trade secret misappropriation claims.  (Mot. 8–13.)

The "CUTSA was enacted with the California's legislative intent to occupy the entire field of misappropriation of trade secrets."  *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-cv-01865-GPC (LL), 2020 WL 5064253, at *16 (S.D. Cal. Aug. 27, 2020) (collecting cases).  The statute "serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information," regardless of whether that information is a trade secret.  *Teva Pharm. USA, Inc. v. Health IQ, LLC*, No. 8:13-cv-00308-CJC (RNBx), 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013).  California courts have held that the CUTSA precludes common law claims to the extent they arise from the "same nucleus of facts as trade secret misappropriation."  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 962 (2009).

Here, Paramount Tariff's fourth, seventh, and eighth causes of action are all based on the same wrongful acts that underlie Paramount Tariff's trade secret misappropriation claims.  The fourth cause of action—intentional interference with

contractual relations—is based on the allegation that Nam obtained financial and customer information while employed at Paramount Tariff, and that Defendants later exploited that information to interfere with Paramount Tariff's customer contracts. (Compl. ¶¶ 57–59.) Similarly, Paramount Tariff's seventh cause of action—violation of the UCL—is based on the allegation that Defendants "wrongfully [took] Paramount Tariff's proprietary and confidential information, including its trade secrets." (*Id.* ¶ 86.) Finally, Paramount Tariff's eighth cause of action—breach of the duty of loyalty—is based on the allegation that "Nam knowingly took and retained files that he downloaded while employed by Paramount Tariff." (*Id.* ¶ 92.) Each of these causes of action share the same "gravamen of the wrongful conduct" that underlies Paramount Tariff's trade secret misappropriation claims, namely, Nam misappropriating Paramount Tariff's trade secrets and using those trade secrets to Defendants' advantage. *K.C. Multimedia*, 171 Cal. App. 4th at 961; (*see* Compl. ¶¶ 65–81.) Thus, CUTSA preempts Paramount Tariff's fourth, seventh, and eighth causes of action.

Paramount Tariff resists this conclusion by arguing the facts underlying the three common law claims go beyond the nucleus of the trade secret claims. (Opp'n 13, 15 (citing *Zayo Grp. LLC v. Hisa*, No. 8:13-cv-00732-JST (JPRx), 2013 WL 12201401, at *2–6 (C.D. Cal. Sept. 17, 2013).) In *Zayo*, the court declined to find CUTSA preemption because the claims "extend[ed] beyond the nucleus of facts in the trade secret claim." *Zayo*, 2013 WL 12201401, at *4. However, *Zayo* is distinguishable from the facts in this case because common law claims in *Zayo* could stand independently even without the facts underlying in the trade secret claim. *Zayo*, 2013 WL 12201401, at *5. Here, by contrast, Paramount Tariff's common law claims do not stand independently. For example, in the UCL claim, Paramount Tariff alleges that Defendants used the "proprietary and confidential information" that Nam allegedly stole "to form their own venture." (Compl.¶ 86.) Without Nam stealing this information—the fact that underlies Paramount Tariff's trade secret claims—

1  Defendants do not "form their own venture," and there would be no UCL claim.
2  Thus, *Zayo*, and the other cases Paramount Tariff cites, are distinguishable and do not
3  alter the Court's conclusion.
4        The Court finds that the wrongful acts alleged by Paramount Tariff underlying
5  its fourth, seventh, and eighth causes of action "plainly and exclusively spell out only
6  trade secrets misappropriation." *Neuman v. B2 Brands, Inc.*, No. 5:07-cv-01025-
7  MLG, 2010 WL 11596467, at *8 (C.D. Cal. Feb. 17, 2010). Accordingly, the Court
8  **DISMISSES** these causes of action. The Court does so **WITH LEAVE TO AMEND**
9  as the Court cannot find leave to amend would be futile.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss. (Dkt. No. 12.) Specifically, the Court **GRANTS** the Motion and **DISMISSES** Paramount Tariff's fourth, seventh, and eighth causes of action **WITH LEAVE TO AMEND**. The Court **DENIES** the Motion as to Paramount Tariff's fifth and sixth causes of action.

If Paramount Tariff chooses to file a First Amended Complaint, it must do so no later than **twenty-one (21) days** from the date of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing. If Paramount Tariff does not timely amend, the dismissal of the fourth, seventh, and eighth causes of action shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend, and the case against Defendants will proceed as to the first, second, third, fifth, and sixth causes of action.

**IT IS SO ORDERED.**

December 9, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**